# IN THE UNITED STATES DISTRICT COURT
## For The Eastern District of North Carolina
### Western Division No.: 5:18-cv-151

| | | |
|---|---|---|
| Timothy Danehy, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Original Complaint |
| | § | |
| v. | § | |
| | § | |
| Comenity Bank | § | Jury Demanded |
| | § | |
| Defendant. | § | |
| | § | |

**PLAINTIFF TIMOTHY DANEHY'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Timothy Danehy ("**Plaintiff**") alleges Comenity Bank ("**Defendant**") "robo-called" him more than 240 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 *et seq*. ("TCPA").

1. **Introduction**

    1.1. "Robocalls" are the #1 consumer complaint in America today.

    1.2. The FTC reported over 3.2 million complaints about robocalls in 2014, of which almost half (1,678,433) occurred after the consumer had already requested that the company stop calling. Federal Trade Commission, National Do Not Call Registry Data Book, FY 2014,

---
Plaintiff's Complaint

Page | 1

at 5 (Nov. 2014). Since this report, the number of complaints has increased. Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." Senate Hearing at 5.

1.3. According to the Federal Communications Commission (FCC), "Unwanted calls and texts are the number one complaint to the FCC. There are thousands of complaints to the FCC every month on both telemarketing and robocalls. The FCC received more than 215,000 TCPA complaints in 2014." https://www.fcc.gov/document/fact-sheet-consumer-protection-proposal.

1.4. The TCPA was enacted to prevent companies like Comenity Bank from invading American citizens' privacy and prevent illegal robocalls.

1.5. Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

1.6. "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization, they wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

1.7. According to findings by the Federal Communication Commission ("FCC")—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

2. **Jurisdiction and Venue**

2.1. Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. § 1331, federal question jurisdiction, as this action involves violations of the TCPA.

2.2. Subject matter jurisdiction, federal question jurisdiction, for purposes of this action is appropriate and conferred by 28 U.S.C. § 1331, which provides that the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States; and this action involves violations of 47 U.S.C. § 227(b)(1)(A)(iii). See *Mims v. Arrow Fin. Servs., LLC,* S.Ct. 740, 748 (2012).

2.3. The alleged violations described in the Complaint occurred in North Carolina. Accordingly, venue is appropriate with this Court under 28 U.S.C. § 1391(b)(2), as it is the judicial district in which a substantial part of the events or omissions giving rise to this action occurred.

3. **Standing**

   3.1. Plaintiff has Article III standing for his claim under the TCPA. *Spokeo, Inc., v. Thomas Robins*, 136 S. Ct. 1540 (2016).

   3.2. Plaintiff was harmed by Defendant's actions of calling his cell phone without consent in the following manners:

   a. Plaintiff's privacy was invaded by Defendant;

   b. Plaintiff was harassed and abused by Defendant's telephone calls;

   c. Defendant's calls were a nuisance to Plaintiff;

   d. Plaintiff's phone was unavailable for other use while processing the illegal calls from Defendant;

   e. Defendant illegally seized Plaintiff's telephone line while it made illegal calls to Plaintiff's cellular telephone;

   f. Plaintiff's telephone line was occupied by multiple unauthorized calls from Defendant;

   g. Defendant's seizure of Plaintiff's telephone line was intrusive; and

  h. Plaintiff was inconvenienced by Defendant's calls, by among other things, hearing his ring and having to check the calling party.

4. **Factual Allegations**

4.1. Plaintiff is a natural person, and citizen of the State of North Carolina, residing in Henderson, North Carolina.

4.2. Plaintiff is the "called party" under the TCPA.

4.3. Defendant is a corporation which was formed in Delaware with its principal place of business located at One Righter Parkway, Suite 100, Wilmington, DE 19803 and which conducts business in the State of North Carolina.

4.4. Each call the Defendant made to the Plaintiff was made using an automatic telephone dialing system ("ATDS") which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C §227(a)(1).

4.5. None of Defendant's telephone calls placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

4.6. Plaintiff is the subscriber and regular user of the cellular telephone numbers at issue, 919-885-9717 and 919-637-2447.

4.7. Plaintiff never provided his aforementioned cellular telephone numbers to the Defendant.

4.8. In or about January 15, 2015, Plaintiff began receiving telephone calls to his cellular telephone number 919-885-9717 from Defendant seeking to recover a debt. Upon receipt of the calls from Defendant, Plaintiff's caller ID identified the calls were being initiated from, but not limited to, the following phone numbers: 720-456-3697; 913-312-1013; 913-312-5159; 614-212-5166; 614-212-5165; 614-754-4053; 614-754-4052 and 614-754-4054.

4.9. Plaintiff answered the calls and stated, "don't call this number" or "stop calling this number" or "you do not have my consent to call this number."

4.10. Additionally, by letter dated February 22, 2015 Plaintiff sent written notice to Defendant of his intent to sue over the illegal phone calls. This letter further put Defendant on notice that it did not have permission to contact Plaintiff. The letter is attached as Exhibit A.

4.11. On April 8, 2015, Defendant responded to Plaintiff by admitting that it contacted him in error as it was actually trying to contact one of its customers regarding a business matter. The letter is attached as Exhibit B.

4.12. On November 8, 2016, plaintiffs sent another written notice to Defendant of his intent to sue over the illegal phone calls. This letter further put Defendant on notice that they did not have permission to contact Plaintiff. The letter is attached as Exhibit C.

4.13. Thus, orally and in writing Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to

Plaintiff's aforementioned cellular telephone numbers by the use of an ATDS or a pre-recorded or artificial voice.

4.14. In August 2017 Defendant again began calling Plaintiff. The calls were to Plaintiff's cell phone number 919-637-2447. Plaintiff received from Defendant approximately 200 calls on this cellular number.

4.15. Plaintiff answered the calls and again stated, "don't call this number" or "stop calling this number" or "you do not have my consent to call this number."

4.16. Thus, orally and in writing Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's aforementioned cellular telephone numbers by the use of an ATDS or a pre-recorded or artificial voice.

4.17. Each call Defendant made to the Plaintiff's aforementioned cellular telephone numbers was done so without the "express consent or permission" of the Plaintiff.

4.18. Despite actual knowledge of their wrongdoing, and that they did not have Plaintiff's express consent or permission, the Defendant continued its barrage of phone calls to Plaintiff's cellular telephone numbers.

4.19. Defendant made at least one call to 919-885-9717 using an "automatic telephone dialing system" (ATDS).

4.20. Defendant made at least 40 calls to 919-885-9717 using an ATDS.

4.21. Defendant made at least 50 calls to 919-637-2447 using an ATDS.

4.22.    Defendant made at least 100 calls to 919-637-2447 using an ATDS.

4.23.    Defendant made at least 150 calls to 919-637-2447 using an ATDS.

4.24.    Defendant made at least 175 calls to 919-637-2447 using an ATDS.

4.25.    Defendant made at least 200 calls to 919-637-2447 using an ATDS.

4.26.    Each call the Defendant made to the Plaintiff in the last four years was made using an ATDS.

4.27.    From about January of 2015 through the filing of this Complaint, Defendant placed approximately 250 automated calls to Plaintiff's telephone numbers, despite the Plaintiff revoking any consent Defendant may have mistakenly believed it had to place calls to his aforementioned cellular telephone numbers. A review of Defendant's records will help establish the number of calls.

4.28.    By effectuating these unlawful phone calls, Defendant has caused the Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

4.29.    Defendant's aggravating and annoying phone calls trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

4.30.    Defendant's phone calls harmed Plaintiff by wasting his time.

4.31. Many of Defendant's calls disrupted Plaintiff's sleep (Plaintiff works at night and sleeps during daylight hours) causing physical harm, insomnia, and stress both physical and emotional.

4.32. Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: Rules Implementing the TCPA of 1991, 23 FCC Rcd 559, 562 (2007). Defendant's phone calls harmed Plaintiff by depleting the battery life on his cellular telephone, and by using minutes allocated to Plaintiff by his cellular telephone service provider.

4.33. Defendant's corporate policy and procedures is structured as to continue to call individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have had.

4.34. Defendant's, corporate policy and procedures provided no means for the Plaintiff to have his cellular numbers removed from the call list.

4.35. Defendant has a corporate policy of using an ATDS or a prerecorded or artificial voice message to collect debts from individuals such as Plaintiff for its financial benefit.

4.36. Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of telephone calls to Plaintiff's cellular telephone by the use of an ATDS or a pre-recorded or artificial voice immediately upon Defendant's placement of the calls.

4.37. Defendant violated the TCPA with respect to the Plaintiff.

4.38. Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

5. **Count 1 (Violation of the TCPA)**

    5.1. Plaintiff incorporates Paragraphs 1-4 above.

    5.2. Defendant caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

    5.3. Defendant willfully and knowingly caused placement of non-emergency telephone calls to Plaintiff's cellular telephone using an ATDS or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

6. **Relief Requested**

    6.1. Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages of up to $1,500 per call and any other such relief the Court may deem just and proper.

This 10th day of April, 2018.

Respectfully submitted:

By: _/s/ Karl S. Gwalteny_
Karl S. Gwaltney

**Maginnis Law, PLLC**
4801 Glenwood Avenue, Suite 310
Raleigh, North Carolina 27612
(919) 960-1545
(919) 882-8763 (fax)

kgwaltney@maginnislaw.com
N.C. State Bar No. 45118
Local Civil Rule 83.1(d) Counsel for Defendant

By:    */s/ Chris R. Miltenberger*
      Chris R. Miltenberger

**The Law Office of Chris R. Miltenberger, PLLC**
1340 N. White Chapel, Suite 100
Southlake, Texas 76092
817-416-5060 (office)
817-416-5062 (fax)
chris@crmlawpractice.com
Texas State Bar Number 14171200


Attorneys for Plaintiff